# ATTACHMENT 6
*SHAUN MICHAEL BOSSE V. MIKE CARPENTER*
NO. CIV-18-204-R

## AFFIDAVIT OF JOE ROBERTSON

STATE OF OKLAHOMA   )
                    )  ss.
COUNTY OF TULSA     )

Before me, the undersigned Notary, on this **9th** day of November, 2018, personally appeared Joe Robertson, known to me of lawful age, who being by me first duly sworn, on his oath, deposes and says:

1. My name is Joe Robertson. I am an attorney licensed to practice law in the State of Oklahoma. I served as Executive Director of the Oklahoma Indigent Defense System ("OIDS") beginning in October 2008 until my retirement on February 28, 2017. Prior to serving as Executive Director, I also served as Division Chief for both of OIDS' Capital Trial Divisions (Sapulpa and Norman).

2. The Shaun Bosse trial occurred during the time I was Executive Director. When the case first came into the Norman Capital Trial Division in 2010, Craig Corgan was the Division Chief. During the pendency of the case, and specifically in February 2012, we had a major reduction in staffing in that division due to budget cuts. Mr. Corgan left the agency; Matthew Haire, who had been Division Chief for a short period of time, was transferred to a different division; and several lawyers and investigators were let go. Dale Anderson, who had been the Chief Investigator in the division, was transferred to a different division. After these staff reductions, Gary Henry was made Division Chief, and only two other lawyers, Bobby Lewis and Mary Bruehl, were left in the division to handle all of the cases.

3. As Executive Director, one concern I had about the Norman Capital Trial Division was that it did not have success in death penalty cases, and I felt like it was due to a failure to properly prepare mitigation cases. Although Gary Henry was promoted to be the new Division Chief, I had reservations about doing so because I was not sure he had the kind of grasp of mitigation needed in capital cases.

4. After Mr. Henry became Division Chief, he advised me of his plan about how he intended to staff capital cases in his division. Because there were only three lawyers left in the division, he advised that he was going to have each of them work on every case. Including Mr. Henry, several people over the course of my time with the agency had expressed concerns to me about Mary Bruehl's abilities as a trial lawyer. I had been told several times that she was not good in the courtroom and would become extremely nervous to the point of freezing up. Because of those perceived weaknesses on her part, Mr. Henry advised me that his plan for the division was to have himself and Mr. Lewis handle the first stage of capital trials and to have Ms. Bruehl be responsible for second stage.

5. I did not like Mr. Henry's plan at all. It confirmed for me that he was treating mitigation as less important because he was assigning his least skilled lawyer to the most important part

ATTACHMENT 6

of the case. In my experience, that had long been the problem with that division; they treated capital cases like first-stage cases, and they are not. Thorough investigation and presentation of mitigation is the most critical part of any capital case, and I was very concerned that Mr. Henry was putting the lawyer that he believed was the weakest member of the team on what is the most critical part of the case.

6. Despite my concerns, Mr. Henry implemented his plan. In the Bosse case, Mr. Henry and Mr. Lewis were primarily responsible for the first stage, and Ms. Bruehl was primarily responsible for the second stage and motions practice. There is no logical reason why Mr. Bosse's case should have been treated as a first stage case. The energy and focus in that case should have been on preparing the best second-stage case possible. That was not done.

7. Very shortly after Mr. Bosse's trial ended, Ms. Bruehl was fired from OIDS. In large part, her termination was due to her inability to perform as a capital trial lawyer. Very shortly after Ms. Bruehl was terminated, Mr. Henry was also terminated due in large part to the concerns I've expressed in this affidavit.

8. I have reviewed an ex parte colloquy that Mr. Henry conducted with Mr. Bosse at the end of second stage. (Tr. XII 154-160). In that colloquy, Mr. Henry asked Mr. Bosse a series of questions regarding whether he felt like his lawyers had done everything he asked them to do; whether they interviewed all the witnesses he wanted them to; whether he agreed with all of their strategic decisions; and whether he was satisfied with the job they did as his lawyers. This was clearly done by Mr. Henry for the sole purpose of defending himself against any potential claims of ineffective assistance of counsel. This is not a colloquy a competent, effective capital defense attorney would ever do with a client. In my opinion, this colloquy created a conflict of interests between Mr. Henry and Mr. Bosse and forced Mr. Bosse to reveal information that would otherwise be protected by the attorney-client privilege. It appears from this colloquy that Mr. Henry was concerned with protecting himself and, to do so, pressured a client into pursuing statements against the client's best interests. Since the Bosse trial, I have learned that Mr. Henry compelled similar colloquies in other capital cases. Had I known about this practice sooner, I would have immediately put a stop to it.

9. I swear and affirm that the foregoing statement is true and correct to the best of my ability and recollection.

FURTHER AFFIANT SAYETH NOT.

*Joe P Robertson*
Joe Robertson

Subscribed and sworn to me this 9th day of November, 2018.

JULIE GARDNER
NOTARY
# 05008474
EXP. 09/12/21
PUBLIC
STATE OF OKLAHOMA

NOTARY PUBLIC

My commission number is:
05008474

My commission expires:
9/12/21