# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SHAUN MICHAEL BOSSE,     )
                                 )
        Petitioner,     )
                                 )     Case No. CIV-18-204-JD
v.                           )
                                 )     (Capital Case)
JIM FARRIS, Warden,     )
Oklahoma State Penitentiary,     )
                                 )
        Respondent.     )

---

## PETITIONER'S REPLY
## TO RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

---

KATRINA CONRAD-LEGLER, OBA No. 16953
ANDREW Z. STEBBINS, IN Bar No. 35066-53
Assistant Federal Public Defenders
Western District of Oklahoma
215 Dean A. McGee Ave., Suite 707
Oklahoma City, Oklahoma 73102
(405) 609-5975 telephone
Katrina_Legler@fd.org
Andrew_Stebbins@fd.org

COUNSEL FOR PETITIONER,
SHAUN MICHAEL BOSSE

December 27, 2022

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES............................................................................iii

### GROUND TWO
RESPONDENT FAILED TO ESTABLISH A PROCEDURAL BAR AND,
ALTERNATIVELY, BOSSE CAN OVERCOME A PROCEDURAL BAR.................... 1

A.  Oklahoma's Procedural Rule Does Not Bar Federal Review
Because It Is Inadequate ............................................................................ 1

B.  Alternatively, Bosse Can Excuse Default Because of Cause and Prejudice ........... 4

    1.  The Actions of Bosse's Counsel Are External Factors That Cannot
Be Imputed to Bosse...................................................................... 4

        a.  Counsel Effectively Abandoned Bosse ............................... 4

        b.  Self-interested Trial Counsel Prevented Preservation of
Claim of Ineffective Assistance ......................................... 5

    2.  Bosse Suffered Actual Prejudice.................................................... 7

C.  Judicially Imposed Limitations on the Habeas Privilege, Including the
Procedural Default Doctrine, Are Unconstitutional ............................... 7

    1.  Respondent Relies on Unconstitutional Judicially Created Barriers to
Bosse's Access to the Privilege of the Writ of Habeas Corpus ................... 7

    2.  Deference to State Court Decisions is Inconsistent with the Original
Meaning of the Habeas Privilege Applicable to State Prisoners................ 11

### GROUND THREE
THE ADMISSION OF HIGHLY PREJUDICIAL PHOTOGRAPHS VIOLATED
BOSSE'S RIGHTS TO DUE PROCESS AND A RELIABLE SENTENCING.............. 13

A.  The Gruesome Photograph Issue Was Fairly Presented to OCCA ........................ 13

B.  Bosse's Claim Is Supported by Clearly Established Law ...................................... 14

i

C.      OCCA's Decision Is Contrary to *Donnelly* Because OCCA Failed to Consider Second-Stage Prejudice ...................................................... 15

GROUND FOUR

OCCA'S ADJUDICATION OF THE VICTIM IMPACT STATEMENTS WAS UNREASONABLE, AND THE STATEMENTS INFLUENCED THE VERDICT ....... 18

A.      OCCA Unreasonably Applied *Chapman* .............................................. 19

B.      OCCA's Decision Was Based on an Unreasonable Determination of Facts ............................................................................................... 19

C.      The Victims' Sentence Recommendations Influenced the Verdict ....................... 20

GROUND FIVE

THE EVIDENCE SUPPORTING THE "MURDER TO AVOID ARREST" AGGRAVATOR WAS INSUFFICIENT ......................................................... 20

GROUND SIX

PROSECUTORIAL MISCONDUCT DEPRIVED BOSSE OF HIS RIGHTS TO A FAIR TRIAL AND RELIABLE SENTENCING ............................................. 21

A.      OCCA Unreasonably Applied *Donnelly* .............................................. 21

CERTIFICATE OF SERVICE ............................................................................. 27

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*Berger v. United States,*
    295 U.S. 78 (1935) ........................................................................ 21, 22

*Booth v. Maryland,*
    482 U.S. 496 (1987) ............................................................................. 15

*Bosse v. Oklahoma,*
    137 S. Ct. 1 (2016) ............................................................................. 3, 19

*Brecht v. Abrahamson,*
    507 U.S. 619 (1993) ........................................................................ 18, 20

*Brown v. Davenport,*
    142 S. Ct. 1510 (2022) ......................................................................... 18

*Caldwell v. Mississippi,*
    472 U.S. 320 (1985) .............................................................................. 23

*Chapman v. California,*
    386 U.S. 18 (1967) .......................................................................... 18, 19

*Coleman v. Thompson,*
    501 U.S. 722 (1991) ........................................................................... 4, 6

*Cone v. Bell,*
    556 U.S. 449 (2009) ............................................................................ 1, 2

*Darden v. Wainwright,*
    477 U.S. 168 (1986) .............................................................................. 13

*Daubert v. Merrell Dow Phamaceuticals, Inc.,*
    509 U.S. 579 (1993) .............................................................................. 23

*Davila v. Davis,*
    137 S. Ct. 2058 (2017) ......................................................................... 10

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) .............................................................................. 12

*Donnelly v. DeChristoforo*,
    416 U.S. 637 (1974) ........................................................................... 13, 16, 22, 25

*Dye v. Hofbauer*,
    546 U.S. 1 (2005) ...................................................................................... 13, 20

*Ex parte Bollman*,
    8 U.S. 75 (1807) .............................................................................................. 9

*Ex parte Royall*,
    117 U.S. 241 (1886) ...................................................................................... 10

*Ferguson v. Skrupa*,
    372 U.S. 726 (1963) ...................................................................................... 10

*Fry v. Pliler*,
    551 U.S. 112 (2007) ...................................................................................... 18

*Glover v. United States*,
    531 U.S. 198 (2001) ...................................................................................... 11

*Gray v. Netherland*,
    518 U.S. 152 (1996) ........................................................................................ 1

*Harrington v. Richter*,
    562 U.S. 86 (2011) ........................................................................................ 12

*Holland v. Florida*,
    560 U.S. 631 (2010) ........................................................................................ 4

*Jackson v. Virginia*,
    443 U.S. 307 (1979) ...................................................................................... 21

*Johnson v. Lee*,
    578 U.S. 605 (2016) ........................................................................................ 1

*Johnson v. Mississippi*,
    486 U.S. 578 (1988) ........................................................................................ 4

*Maples v. Thomas*,
    565 U.S. 266 (2012) ........................................................................................ 5

*Massaro v. United States,*
    538 U.S. 500 (2003) ......................................................................................5, 6

*Murray v. Carrier,*
    477 U.S. 478 (1986) ...........................................................................................4

*Nat'l Fed'n of Indep. Bus. v. Sibelius,*
    567 U.S. 519 (2012) .........................................................................................10

*New York Cent. R. Co. v. Johnson,*
    279 U.S. 310 (1929) .........................................................................................22

*Ring v. Arizona,*
    536 U.S. 584 (2002) .........................................................................................21

*Romano v. Oklahoma,*
    512 U.S. 1 (2004) ......................................................................................13, 14

*Shinn v. Ramirez,*
    142 S. Ct. 1718 (2022) .......................................................................................9

*Smith v. Digmon,*
    434 U.S. 332 (1978) .........................................................................................14

*Trest v. Cain,*
    522 U.S. 87 (1997) .............................................................................................1

*United States v. Young,*
    470 U.S. 1 (1985) ......................................................................................23, 24

*Viereck v. United States,*
    318 U.S. 236 (1943) .........................................................................................24

*Wainwright v. Sykes,*
    433 U.S. 72 (1977) .............................................................................................9

*Woodson v. North Carolina,*
    428 U.S. 280 (1976) .........................................................................................23

# FEDERAL CIRCUIT COURT CASES

*Beras v. Johnson*,
   978 F.3d 246 (5th Cir. 2020) ..................................................................... 9

*Brecheen v. Reynolds*,
   41 F.3d 1343 (10th Cir. 1994) ................................................................... 2

*Cannon v. Mullin*,
   383 F.3d 1152 (10th Cir. 2004) ............................................................ 2, 3

*DeRosa v. Workman*,
   696 F.3d 1302 (10th Cir. 2012) ............................................................... 20

*Hancock v. Trammell*,
   798 F.3d 1002 (10th Cir. 2015) ................................................................. 1

*Hollis v. Davis*,
   941 F.2d 1471 (11th Cir. 1991) ................................................................. 5

*Jackson v. Shanks*,
   143 F.3d 1313 (10th Cir. 1998) ................................................................. 2

*Johnson v. Martin*,
   3F.4th 1210 (10th Cir. 2021) ................................................................... 15

*Lamb v. Oklahoma Cnty. Dist. Ct.*,
   229 F. App'x 690 (10th Cir. Apr. 10, 2007) ........................................... 15

*Malone v. Carpenter*,
   911 F.3d 1022 (10th Cir. 2018) ............................................................... 18

*Manning v. Foster*,
   224 F.3d 1129 (9th Cir. 2000) .............................................................. 5, 6

*McCormick v. Parker*,
   821 F.3d 1240 (10th Cir. 2016) ................................................................. 1

*Neill v. Gibson*,
   278 F.3d 1044 (10th Cir. 2001) ................................................................. 7

*Simpson v. Carpenter*,
    912 F.3d 542 (10th Cir. 2018) ................................................................. 2

*Spears v. Mullin*,
    343 F.3d 1215 (10th Cir. 2003) ................................................... 2, 16, 24

*United States v. Morena*,
    547 F.3d 191 (3d Cir. 2008) ................................................................. 24

*United States v. Pena*,
    930 F.2d 1486 (10th  Cir. 1991) ........................................................... 25

## FEDERAL DISTRICT COURT CASES

*In re Kravitz*,
    488 F. Supp. 38 (M.D. Pa. 1979) ............................................................ 4

*Overton v. Crow*,
    2020 WL 2107542 (W.D. Okla. Mar. 31,  2020) .................................. 18

*Underwood v. Duckworth*,
    2016 WL 4059162 (W.D. Okla. July 28, 2016) .............................. 19, 20

*Welch v. Sirmons*,
    2007 WL 927950 (N.D. Okla. Mar. 26,  2007) .................................... 18

## STATE COURT CASES

*Bosse v. State*,
    360 P.3d 1203 (Okla. Crim. App. 2015) ................................................. 3

*Bosse v. State*,
    400 P.3d 834 (Okla. Crim. App. 2017) ..........................................Passim

## FEDERAL STATUTES

U.S. Const. amend. XIV § 1 .............................................................. 7, 8, 11, 12

U.S. Const. amend. XIV § 5 ....................................................................... 10

U.S. Const. Art. I, § 9 ........................................................................................ 7

28 U.S.C. § 2254 ......................................................................................... 10, 19

14 Stat. 385, The Habeas Corpus Act of 1867 (HCA) ........................................ 8

## STATE STATUTES AND RULES

Okla. Stat. Tit. 22 § 1089(D) .............................................................................. 2

## OTHER AUTHORITIES

Amar, A. R. (1992). The Bill of Rights and the Fourteenth Amendment.
*The Yale Law Journal*, *101*(6), 1193. ..................................................... 11

Blaine, J. G. (1884). *Twenty Years of Congress*. Norwich.................................. 8

Foner, E. (2019). *The Second Founding: How the Civil War and Reconstruction
Remade the Constitution*. W.W. Norton & Company............................... 8

Rakove, J. N. (2009). The Annotated U.S. Constitution and Declaration of
Independence ........................................................................................... 8

## GROUND TWO
### RESPONDENT FAILED TO ESTABLISH A PROCEDURAL BAR AND, ALTERNATIVELY, BOSSE CAN OVERCOME A PROCEDURAL BAR.

Contrary to Respondent's assertion, Bosse did not forfeit "future arguments to overcome the [procedural] bar." Doc. 50 at 29–32.[1] Procedural default is an affirmative defense. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) ("procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e], if it is not to 'lose the right to assert the defense thereafter'" (quoting *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996))); *see also McCormick v. Parker*, 821 F.3d 1240, 1245 (10th Cir. 2016) ("procedural default is an affirmative defense"). Respondent cites *Hancock v. Trammell*, 798 F.3d 1002 (10th Cir. 2015), in support of his argument. But *Hancock* is distinguishable: Hancock questioned the existence of a state court adjudication on the merits for the first time on appeal, and his claim was considered forfeited because he had not raised it in the district court. *Id.* at 1011. Neither statute nor caselaw requires petitioners to challenge adequacy or independence, or to show cause and prejudice, before a respondent asserts procedural default. Respondent's argument is meritless.

### A.    Oklahoma's Procedural Rule Does Not Bar Federal Review Because It Is Inadequate.

The assessment of whether a particular state procedure is "adequate" or "independent" is a question of federal law. *See, e.g.*, *Johnson v. Lee*, 578 U.S. 605, 608 (2016) (per curiam). As the Supreme Court explained, "[w]e have recognized that the

---

[1] Citations to specific page numbers within documents filed in this Court will be referred to using the original pagination.

adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (cleaned up).

Oklahoma Statute Title 22 § 1089(D)(8) is inadequate to serve as a federal bar because doing so would "deprive [Bosse] of any meaningful review of his claim." *Spears v. Mullin*, 343 F.3d 1215, 1253–54 (10th Cir. 2003), citing *Brecheen v. Reynolds*, 41 F.3d 1343, 1364 (10th Cir. 1994). While *Spears* pointed to the general adequacy of § 1089(D)(8) in this regard, 343 F.3d at 1254, this case presents extraordinary circumstances that have, to this point, thwarted full presentation of a meritorious ineffective assistance claim.

Counsel may be conflicted in choosing whether to raise claims of ineffective assistance of counsel ("IAC") against a colleague from the same office. *See*, *e.g.*, *Cannon v. Mullin*, 383 F.3d 1152, 1173–74 (10th Cir. 2004) (reversing finding of procedural default and remanding for further fact development) *abrogated in part on other grounds by Simpson v. Carpenter*, 912 F.3d 542 (10th Cir. 2018). *See also Jackson v. Shanks*, 143 F.3d 1313, 1318–19 (10th Cir. 1998) (general rule that failure to raise claim on direct appeal constitutes procedural default "must give way" when claim is IAC and "petitioner had no opportunity to develop facts relating to his counsel's performance and had the same counsel during his trial and direct appeal"). Cannon was represented at trial by two attorneys from the Tulsa Public Defender's Office, and he was represented on direct appeal by another attorney from the same office. *Cannon*, 383 F.3d at 1173. "If a criminal defendant is represented by trial and appellate counsel from the same office, appellate counsel's assessment of trial counsel's performance may be less than completely objective." *Id*. The

court reasoned that an "understandable, although inappropriate, regard for collegiality may restrain appellate counsel from identifying and arguing trial-attorney error." *Id*. The court also noted that "two lawyers from the same private law firm are often treated as one for conflict-of-interest purposes. . . ." *Id*. The court concluded that Cannon's trial and appellate counsel were not so "separate" as to permit procedural bar. *Id*. at 1174.

Trial and appellate counsel were not separate enough to allow meaningful review of Bosse's underlying claim. Bosse's case contains the same circumstances identified in *Cannon*: Bosse's trial and appellate counsel (as well as post-conviction counsel) were employed by the same organization and worked within the same physical office. *See* 12-05-2022 O.I.D.S. Letter, Attachment 1. As a result, and as discussed in Bosse's Petition, appellate counsel did not allege that trial counsel was ineffective for failing to both investigate Bosse's life history and prepare mitigation witnesses.[2] Doc. 19 at 43–48. The jury did not hear an accurate, cohesive second-stage defense, and Bosse was prejudiced because he was deprived of a fair and reliable sentencing. *Id*. at 48–53. Appellate counsel were, in turn, ineffective for failing to conduct an extra-record investigation and raise a colorable ineffective assistance claim against trial counsel. *Id*. at 48.

---

[2] Appellate counsel only argued that trial counsel was ineffective for failing to object to medical examiner testimony and for failure to object to improper comments in the State's closing argument. *Bosse v. State*, 360 P.3d 1203, 1234 (Okla. Crim. App. 2015), *cert. granted, judgment vacated on other grounds*, *Bosse v. Oklahoma*, 137 S. Ct. 1 (2016); *adhered to on reh'g*, *Bosse v. State*, 400 P.3d 834, 865 (Okla. Crim. App. 2017).

**B.      Alternatively, Bosse Can Excuse Default Because of Cause and Prejudice.**

If OCCA's default is found adequate, Bosse is still entitled to receive federal review, because he can show cause and prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Both cause and prejudice must be shown to excuse a procedural default and permit relief on a defaulted claim. *See*, *e.g.*, *Murray v. Carrier*, 477 U.S. 478, 485–86 (1986).

Determining whether cause and prejudice exist presents factual questions. Even if the state courts have made a record on the genesis and effect of an alleged default, a hearing may be held on controlling and controverted factual issues surrounding the default—including any excuses for it—because cause and prejudice are "federal question[s]" on which the federal courts have a duty to make "an independent determination." *In re Kravitz*, 488 F. Supp. 38, 47 (M.D. Pa. 1979). *Accord Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (citing cases).

**1.      The Actions of Bosse's Counsel Are External Factors That Cannot Be Imputed to Bosse.**

"Cause" for a procedural default exists if "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. *Accord Coleman*, 501 U.S. at 752–53.

**a.      Counsel Effectively Abandoned Bosse.**

"Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." *Holland v. Florida*, 560 U.S. 631, 659 (2010) (Alito J., concurring). Although ordinarily "when a petitioner's postconviction attorney misses a filing deadline, the

petitioner is bound by the oversight and cannot rely on it to establish cause," "[a] markedly different situation is presented, . . . when an attorney abandons his client without notice, and thereby occasions the default." *Maples v. Thomas*, 565 U.S. 266, 281 (2012) (finding cause for default when counsel abandoned petitioner). The Court decided that "the unusual circumstances of this case, principles of agency law and fundamental fairness point to the same conclusion: There was indeed cause to excuse Maples' procedural default" because, "[t]hrough no fault of his own, Maples lacked the assistance of any authorized attorney." *Id.* at 289.

As alleged in Bosse's Petition, Bosse was disarmed by circumstances beyond his control. Doc. 19 at 32–33. Trial counsel was "not operating as [Bosse's] agent in any meaningful sense of the word" when he led Bosse through a colloquy (Tr. XII 154–60) that appellate counsel felt precluded them from bringing an IAC claim. *See* Pybas and Morehead Affidavits at Docs. 19-9, 19-10. Thus, trial counsel effectively abandoned Bosse with regard to his ability to bring claims otherwise available to him. As a result, there is cause to excuse Bosse's procedural default.

### b. Self-interested Trial Counsel Prevented Preservation of Claim of Ineffective Assistance.

Procedural default may be excused for cause when counsel acted to protect himself by preventing preservation of an IAC claim. *See, e.g.*, *Manning v. Foster*, 224 F.3d 1129 (9th Cir. 2000); *Hollis v. Davis*, 941 F.2d 1471, 1478–79 (11th Cir. 1991) (if lawyer acts "out of fear for his own practice and reputation," behavior constitutes "'objective factor external to the defense' which is 'cause' for [a] . . . procedural default"); *see also Massaro*

*v. United States*, 538 U.S. 500, 502–03, 507 (2003) (approvingly referring to Second Circuit's recognition that "an attorney who handles both trial and appeal is unlikely to raise an ineffective-assistance claim against himself" and recognizing that equivalent problems "may arise . . . when different lawyers in the same law office handle trial and appeal"). As the Ninth Circuit recognized in *Foster*, "there was a clear conflict between [petitioner's] interest in presenting and prevailing in his [IAC] claim and [trial counsel's] interest in protecting himself from the damage such an outcome would do to his professional reputation and from exposure to potential malpractice liability or bar discipline." 224 F.3d at 1134–35. *Coleman* buttresses the preceding authority in two important ways. First, by binding petitioners, like Bosse, to decisions made by counsel only "in furtherance of the litigation" (*Coleman*, 501 U.S. at 753), and thus, apparently, not to decisions made in furtherance of counsel's own interests. And, second, by eschewing outcomes that are "contrary to well-settled principles of agency law." *Id*. at 754.

Trial counsel for Bosse acted in self-interest rather than as an agent of Bosse. As developed in Bosse's Petition, and its attachments, trial counsel selfishly attempted to insulate himself from claims of ineffectiveness. For example, trial counsel had Bosse sign a form in which he chose his own trial strategy. *See* Doc. 19-7. Trial counsel also walked Bosse through an on-record colloquy; counsel got Bosse to agree that he had done everything required of him and that Bosse was satisfied with all of the actions taken and decisions made by counsel throughout their representation. Tr. XII 154–60. Trial counsel's tactics succeeded, and appellate counsel abandoned their plan to raise an ineffectiveness claim against trial counsel. *See* Pybas and Morehead Affidavits at Docs. 19-9, 19-10.

Because trial counsel acted in self-interest, and not in furtherance of Bosse's defense, there is cause to excuse procedural default.

### 2.   Bosse Suffered Actual Prejudice.

The specifics of appellate counsel's omissions further fulfill the cause-and-prejudice test. *See Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001) (the "relevant questions are whether appellate counsel was objectively unreasonable in failing to raise [claim] on direct appeal and, if so, whether there is a reasonable probability that, but for [] counsel's unreasonable failure to raise these claims, [petitioner] would have prevailed on [] appeal") (citation and internal quotation marks omitted). *See also id*. at 1057 n.5 (clarifying that claim need not have resulted in reversal on appeal, as this is higher standard than "reasonable probability" and therefore conflicts with *Strickland*). Bosse's Petition explained the merits of his appellate counsel's omitted IATC claims. Doc. 19 at 43–53. There is a reasonable probability that, but for Bosse's appellate counsel's failure to raise meritorious IATC claims, Bosse would have prevailed (on additional grounds) on appeal.

### C.   Judicially Imposed Limitations on the Habeas Privilege, Including the Procedural Default Doctrine, Are Unconstitutional.

### 1.   Respondent Relies on Unconstitutional Judicially Created Barriers to Bosse's Access to the Privilege of the Writ of Habeas Corpus.

Under the original public meaning of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, and the Suspension Clause, U.S. Const. Art. I, § 9, cl. 2, a judicially created doctrine that bars or restricts this Court's review of constitutional errors is not law if it allows Respondent to "abridge the privileges or immunities of citizens of the United States" or to "deny to any person within its jurisdiction the equal protection of

the laws." U.S. Const. amend. XIV § 1. That is precisely the kind of unconstitutional allowance that Respondent seeks in his Response, and this Court should reject it.

The Privileges or Immunities, Due Process of Law, and Equal Protection of the Laws Clauses "were designed to reinforce one another" in order to achieve "the ambitious purposes of the Fourteenth Amendment." Jack N. Rakove, The Annotated U.S. Constitution and Declaration of Independence 258 (2009). One of those aims was a permanent, structural sea-change in "'the relation between the national and state governments, respecting the question of human liberty,'" so that "'[f]reedom of the person became *henceforth a matter of national concern*.'" James G. Blaine, Twenty Years of Congress 539 (Norwich 1884) (quoted in Eric Foner, The Second Founding: How the Civil War and Reconstruction Remade the Constitution 32 (2019)). As written and applied, the procedural default doctrine would reverse that change for people whose constitutional rights were violated in the states' criminal courts and consign state prisoners to a pre-Civil War conception of federalism. Both the text and the context of the Fourteenth Amendment preclude that result. At the time of ratification, the Fourteenth Amendment guaranteed that citizens whose constitutional rights were violated by a State's criminal courts would have the privilege of a newly modified remedy—the Great Writ of habeas corpus—that would immunize citizens from unconstitutional processes. *See* The Habeas Corpus Act of 1867 (HCA), 14 Stat. 385. The procedural default doctrine privileges the states' institutional interests over the national concern with personal rights contrary to the Fourteenth Amendment's original meaning and purpose. Procedural default also violates the

Constitution's separation of powers by making judicial doctrine superior to duly enacted statutory and constitutional texts.

A basic tenet of our Constitution is that "only Congress can write law." *Beras v. Johnson*, 978 F.3d 246, 254–55 (5th Cir. 2020) (Oldham, J., concurring). Yet in *Wainwright v. Sykes*, 433 U.S. 72, 77–81 (1977), the Supreme Court, on its way to adopting the procedural default doctrine, surveyed its "historic willingness to overturn or modify its earlier views of the scope of the writ, even where the statutory language authorizing judicial action has remained unchanged." *Id.* at 81. More recently, in *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), the Court simultaneously invoked a judicially enacted limitation on federal habeas review—the procedural default doctrine—which is not codified in § 2254 or any other provision applicable to the case, 142 S. Ct. at 1732–34, and declared that the Court "ha[s] no authority to amend" that same statute. *Id.* at 1736. Under this view, "both Congress and federal habeas courts" have equal powers to create law in "strict rules requiring prisoners to raise all of their federal claims in state court before seeking federal relief." *Id.* at 1732–33.

But, as the Fifth Circuit wrote in *Beras*, *supra*, Congress and the federal courts do not have equal powers in enacting and shaping the writ: what Congress defines at a time of constitutional enactment or amendment is what the Constitution protects thereafter. *Ex parte Bollman*, 8 U.S. 75, 95–96 (1807). The procedural default doctrine is not part of any habeas law enacted by Congress, and neither a textualist nor an originalist approach can vindicate it.

To the extent the procedural default doctrine meant that "a federal court *may not review* federal claims that were procedurally defaulted in state court," *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (emphasis added), it directly conflicts with both the statutory text that courts "shall consider" all federal constitutional claims, 28 U.S.C. § 2254(a), and the original public meaning of the federal-state habeas privilege. Such judicial modifications of the habeas privilege violate "the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." *Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963).

The Court created the exhaustion requirement and later the procedural default doctrine to achieve "harmony" between state and federal courts. *Ex parte Royall,* 117 U.S. 241, 252 (1886). Even so, the Court acknowledged "that while it might appear unseemly that a prisoner, after conviction in a state court, should be set at liberty by a single judge on habeas corpus, there was no escape from the act of 1867." *Id.* at 253. That proviso, and the Court's consistent refusal to say it lacked jurisdiction to grant the writ before exhaustion or after procedural default, is significant because the Court's "respect for Congress's policy judgments . . . can never extend so far as to disavow restraints on federal power that the Constitution carefully constructed." *Nat'l Fed'n of Indep. Bus. v. Sibelius*, 567 U.S. 519, 538 (2012). One such constraint is the Constitution's allocation to Congress, not the Court, the power to enact national policy for securing the privileges or immunities of citizenship. U.S. Const. amend. XIV, § 5. In § 2254(a), Congress instructed federal courts to consider state prisoners' constitutional claims on habeas review. No federal court has the power to reject that policy in favor of the policy considerations that inform the procedural default

10

doctrine. The Constitution guarantees the privilege of habeas corpus and assigns Congress the power to establish the scope of habeas review.

### 2. Deference to State Court Decisions is Inconsistent with the Original Meaning of the Habeas Privilege Applicable to State Prisoners.

Deference to state court decisions is incompatible with the original meaning of the habeas privilege. If federal courts had to defer to state courts deploying Black Codes[3] to re-enslave people, the enslavements would have (arguably) continued, at least until federal review could be obtained. But there is no such thing as a de minimis unconstitutional confinement. *See Glover v. United States*, 531 U.S. 198, 203 (2001).

Envisioning freedom of the person as the paramount national policy after the Civil War, the Framers forbade States from "enact[ing] or enforce[ing] any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. The original public meaning of privileges or immunities included the benefits of habeas review, the fair-trial rights guaranteed by the Sixth Amendment, and the Due Process of Law Clause in the Fourteenth Amendment itself.

---

[3] The habeas privilege partly reflected Congress's observation that penal sanctions imposed, or threatened, under Black Codes were being used to re-enslave people after ratification of the Thirteenth Amendment. Congress saw that

> states attempting to resurrect slavery de facto through Black Codes would predictably manipulate habeas to implement their scheme. Protecting the self-described 'privilege' of habeas corpus against wayward states was thus of central concern to the framers of the Fourteenth Amendment.

Akhil R. Amar, *The Bill of Rights and the Fourteenth Amendment*, 101 Yale L.J. 1193, 1128 n.161 (1992).

These specific provisions, coupled with the enforcement mechanisms Congress enacted at roughly the same time, including the HCA, made enforcement of constitutional rights through federal habeas review part of the due process of law citizens would be guaranteed after 1868. To ensure these privileges of citizenship would be realized equally for all, the Reconstruction Framers guaranteed national, *i.e.*, federal, enforcement and "the Equal Protection of the Laws." U.S. Const. amend. XIV, § 1.

Neither the text of the Fourteenth Amendment nor any original public understanding of it permits an exception to the benefits of the habeas privilege in which the Constitution need only be applied "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Just as the First Amendment protects modern forms of communications," *District of Columbia v. Heller*, 554 U.S. 570, 582 (internal citations omitted), the habeas privilege guaranteed by the Fourteenth Amendment protects people from unconstitutional state confinement even if the confinement continues due to a "procedural bar" or erroneous constitutional ruling that was unknown in 1868. The principles of comity and federalism underlying the procedural default doctrine contradict the original public meaning of the Fourteenth Amendment. It is inconceivable that the framers of the Fourteenth Amendment—who saw first-hand the abuses of state law and judicial procedures to re-enslave citizens—would have countenanced a habeas procedure that privileged state procedural rules and deferred to state courts to abridge federal rights.

**GROUND THREE**
**THE ADMISSION OF HIGHLY PREJUDICIAL PHOTOGRAPHS VIOLATED**
**BOSSE'S RIGHTS TO DUE PROCESS AND A RELIABLE SENTENCING.**

**A.     The Gruesome Photograph Issue Was Fairly Presented to OCCA.**

Respondent alleges that Bosse failed to fairly present the admission of gruesome and prejudicial photographs to OCCA as a federal claim. Thus, Respondent argues, the claim is unexhausted and barred. Doc. 50 at 32. Contrary to this assertion, this claim was sufficiently raised in Bosse's direct appeal brief and put Respondent, as well as OCCA, on notice. Respondent's effort to minimize direct appeal counsel's inclusion of federal law as only "bookending" the argument is misplaced. Doc. 50 at 33. *See Dye v. Hofbauer*, 546 U.S. 1, 3-4 (2005) (outlining specific allegations of prosecutorial misconduct within the text of the argument heading was an instance where the habeas petitioner apprised the state court of his claim).

In part, appellate counsel argued that "the State's case was not so overwhelming that it can be found beyond a reasonable doubt that the admission of this evidence did not contribute to Bosse's convictions or sentences." Direct Appeal Brief (DA Brief) at 47. The federal law cited by counsel supports this assertion. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) *citing Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (the relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process"). Direct appeal counsel cited authority that the Supreme Court continues to apply. *Donnelly* supplies the analytical framework in which courts consider whether the admission of evidence "so infected the trial with unfairness to make the resulting conviction a denial of due process." *Romano v.*

13

*Oklahoma*, 512 U.S. 1, 12 (2004). Under *Donnelly*, appellate counsel argued that the probative value of the photographs was substantially outweighed by the potential prejudice. DA Brief at 46. Appellate counsel, thus, argued that the gruesome photographs so infected the trial proceedings that Bosse was denied due process.

Both Respondent and OCCA knew that Bosse relied on this analytical framework in arguing the photographs fatally infected his trial proceedings. DA Brief at 40-47; Doc. 19 at 58. Respondent acknowledged, "All things considered, Defendant was not deprived of a fundamentally fair trial in violation of due process based upon crime scene and autopsy photos." Appellee Brief at 61. OCCA was also aware of the framework, and it acknowledged that Bosse had claimed a violation of the Eighth and Fourteenth Amendments. *Bosse*, 400 P.3d at 853.

Thus, OCCA did, in fact, have a fair opportunity to correct the federal constitutional violation, and it failed to do so. Whether the exhaustion requirement "has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court." *Smith v. Digmon*, 434 U.S. 332, 333 (1978).

**B.    Bosse's Claim Is Supported by Clearly Established Law.**

In the alternative, Respondent argues that this claim must fail for lack of clearly established federal law and this Court should further find this claim is not a cognizable matter for federal habeas corpus review. Doc. 50 at 32. Respondent's argument obscures the contents and arguments of Bosse's pleading. As Bosse argues, "The admission of these photographs therefore denied Bosse his right to due process and a fundamentally fair trial."

Doc. 19 at 61. "[T]he significance of these photographs was even greater in the critical sentencing stage." Doc. 19 at 61.

In *Johnson v. Martin*, 3 F.4th 1210, 1230 (10th Cir. 2021), the Tenth Circuit found that the Supreme Court had expressly considered whether "the introduction of . . . evidence . . . violated the Due Process Clause of the Fourteenth Amendment" by using the "analytical framework" provided by the prosecutorial-misconduct inquiry in *Donnelly*. The court noted, "we reached the merits of the petitioner's due process claim alleging admission of the prejudicial and irrelevant evidence without questioning the existence of clearly established federal law." *Id*. at 1230. Consequently, the *Johnson* court rejected the State's argument that the claim failed for want of clearly established federal law. *Id*. at 1230.

Here, the photographs depicting the victims' charred bodies focused the jury's attention on the postmortem damage to the bodies rather than on the actual circumstances of their deaths. This type of photographic evidence is no less inflammatory or prejudicial than the victim impact statements deemed inadmissible in *Booth v. Maryland*, 482 U.S. 496 (1987).

**C.    OCCA's Decision Is Contrary to *Donnelly* Because OCCA Failed to Consider Second-Stage Prejudice.**

OCCA's ruling was contrary to the analytical framework of *Donnelly*, which is among the authority Bosse relied on in his Petition. Doc. 19 at 60. Respondent incorrectly argues that Bosse relies solely on *Lamb v. Oklahoma Cnty. Dist. Ct*., No. 06-6222, 229 F. App'x 690, 694 (10th Cir. Apr. 10, 2007) (unpublished). Doc. 50 at 48–49.

The Tenth Circuit has held that although there are no clearly defined legal elements to the *Donnelly* analysis, the fundamental-fairness inquiry requires the effect of the admission of photographs to be reviewed within the context of the entire second stage. *Spears*, 343 F.3d at 1226. Bosse cited *Spears* to argue that OCCA's ruling was contrary to existing law because the court had failed to consider separately the gruesome photographs and their resulting prejudice to his second-stage proceedings. Doc. 19 at 62-63. Respondent countered any reliance on *Spears* is irrelevant because the circumstances were unique in *Spears*. Doc. 50 at 59-60.[4]

OCCA acknowledged that Griffin and C.G. were dead before the charring to their bodies from the fire occurred. *Bosse,* 400 P.3d at 853. The heinous, atrocious, or cruel aggravator, like in *Spears*, focused on conscious suffering, while the photographs focused on the aftermath of the fire to their bodies. Doc. 19 at 63. *See Spears*, 343 F.3d at 1227–28 ("Because the heinous, atrocious, or cruel aggravator focuses on the victim's conscious suffering, and the evidence showed the victim died or lost consciousness early in the beating, the photographs of all of his injuries were unduly prejudicial at the second phase").

Respondent addressed the photographs specifically and attempts to support the corroborating value of the evidence while downplaying their gruesomeness. Doc. 50 at 52-56. The photographs were gratuitous and intended to inflame the jurors because the testimony of the State's witnesses supported the State's theory of events. Thus, the

---

[4] Respondent attempts to differentiate *Spears* from Bosse's case by arguing the challenged photographs were admitted in first-stage here but in the second-stage in *Spears*. Doc. 50 at 60. Respondent's argument ignores that all first-stage evidence was incorporated into the second stage. Tr. X at 112.

admission of the photographs depicting burn injuries to the three victims was unduly prejudicial, and particularly so in the cases of Griffin and C.G., who were dead before the fire was started.

Francia Thompson recounted her investigation of the crime scene. Tr. IV at 68. Thompson testified to floor plans and sketches of the trailer to indicate the location of the bodies. St. Exs. 99-101. Thompson's testimony adequately described the crime scene and the state of the bodies, which eliminated the need for the admission of the following State's Exhibits: 43, 44, 45, 47, 48, 50, 52, 65, 87, 92, and 95. Tr. IV at 24, 114, 116, 119, 121, 133, 141-42, 144, 157. Dr. Yacoub testified that State's Exhibit 98 was an autopsy photograph of CG's charred back. Tr. V at 227.

In addition to her description of the State's Exhibits, Thompson also testified in detail about the condition of C.H.'s body. Tr. IV at 133. It was not only the jurors, as OCCA surmised, whose impartiality was affected. While discussing the exhibits with Thompson, Assistant District Attorney Susan Caswell stated, "I'm going to show you State's Exhibit No. 67 – I apologize. I have to look at it sometimes too." Tr. IV at 134. Later, during second-stage closing arguments, Caswell said, "[Bosse] didn't even flinch like y'all did and I did when the photographs of those victims were put up on the TV." Tr. XIII at 17. The photographs were disturbing and ultimately prejudiced Bosse's second-stage proceedings.

## GROUND FOUR
## OCCA'S ADJUDICATION OF THE VICTIM IMPACT STATEMENTS WAS UNREASONABLE, AND THE STATEMENTS INFLUENCED THE VERDICT.

Respondent argues that Bosse "has not carried either his burden under *Brecht* [*v. Abrahamson*, 507 U.S. 619, 637 (1993)] *or* his burden of showing the OCCA's *Chapman* [*v. California*, 386 U.S. 18 (1967)] analysis was legally or factually unreasonable." Doc. 50 at 69 (emphasis added). Bosse's Petition was filed in February 2019—more than three years before the Supreme Court's decision in *Brown v. Davenport*, 142 S. Ct. 1510 (2022), explained that "a federal court cannot grant relief without first applying both the test this Court outlined in *Brecht* and the one Congress prescribed in AEDPA." *Id*. 1517. The Tenth Circuit had held, only one year before Bosse's Petition, that a petitioner must argue *Brecht* as well as *Chapman* unreasonableness under AEDPA. *Malone v. Carpenter*, 911 F.3d 1022, 1030 (10th Cir. 2018). *See also Overton v. Crow*, No. CIV-19-598-F, 2020 WL 2107542, at *14 (W.D. Okla. Mar. 31, 2020) (agreeing with the Tenth Circuit's "implication" that "the applicable standard is less than straightforward"). But, as Justice Kagan wrote, "we have explained[] the *Brecht* standard 'obviously subsumes' the 'more liberal' AEDPA one: If a defendant meets the former, he will 'necessarily' meet the latter too." *Id*. at 531 (Kagan, J., dissenting) (quoting *Fry v. Pliler*, 551 U.S. 112, 120 (2007)). *See also Welch v. Sirmons*, No. 00-CV-0105 CVEPJC, 2007 WL 927950, at *11 (N.D. Okla. Mar. 26, 2007) (applying *Brecht*-test without analyzing *Chapman* under AEDPA). For that reason, Bosse's Petition devoted significant attention to whether the unconstitutional statements by the victims "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. *See* Doc. 19 at 68–75

18

(discussing the four factors prescribed in *Underwood v. Duckworth*, No. CIV-12-111-D, 2016 WL 4059162, at *18 (W.D. Okla. July 28, 2016)). In any event, as Respondent recognized, Doc. 50 at 69, Bosse pleaded unreasonableness of law, 28 U.S.C. § 2254(d)(1), and fact, 28 U.S.C. § 2254(d)(2), though without specific reference to the relevant sub-sections of AEDPA.

## A.     OCCA Unreasonably Applied *Chapman*.

The Supreme Court found that the victims' sentence recommendations were improperly admitted. *Bosse*, 137 S. Ct. 1 at 2. On remand, OCCA determined that the trial court's error was "harmless beyond a reasonable doubt." *Bosse*, 400 P.3d at 857. In so holding, OCCA unreasonably applied *Chapman*. In reaching its conclusion, OCCA unreasonably gave the *Underwood* factors, *supra*, greater weight than *Chapman* requires. *Id*. at 855–57. *Chapman* did not conduct a factors test, but instead stressed the continuous and repeated unconstitutional arguments by the prosecutor. 386 U.S. 18 at 828–29. Here, the improperly admitted recommendations could not be *harmless beyond a reasonable doubt* in light of the prosecutors' repeated solicitation of death sentence recommendations.

## B.     OCCA's Decision Was Based on an Unreasonable Determination of Facts.

The record reflects the jury's contemporaneous emotional displays immediately following each family member's request for death. Tr. X at 223. The weight of these requests caused, or at least contributed to, the jurors' emotional responses, which were noted immediately after each request. Based on the record, it is unreasonable to conclude, as OCCA concluded, that "any emotional effect on jurors was the result of the witnesses' descriptions of the impact of the crimes." *Bosse*, 400 P.3d at 856. Further, while "only the

19

most callous individual would be unaffected by a plea from a [decedent's family member]," *DeRosa v. Workman*, 696 F.3d 1302, 1306 (10th Cir. 2012) (denying rehearing en banc) (Lucero, J., dissenting), Respondent asks this Court, Doc. 50 at 76, to adopt OCCA's reasoning that the victim's requests for death were harmless, in part, because the trial court had instructed the jury about the proper use of victim impact statements. *Bosse,* 400 P.3d at 856. Respondent's argument strains credulity.

**C.      The Victims' Sentence Recommendations Influenced the Verdict.**

Respondent argues that all four *Underwood* factors weigh in favor of finding that the victims' impact statements did not have a substantial or injurious effect on the jury's verdict. Doc. 50 at 69–79. *See Brecht*, 507 U.S. at 637. Bosse agrees that the third factor favors Respondent; however, the remaining factors—such as the quantity and nature of the recommendations—favor Bosse. The victims' repeated, drumbeat sentence recommendations had the effect that the State desired when it elicited the victims' requests: substantially influencing the jury's death verdict.

**GROUND FIVE**
**THE EVIDENCE SUPPORTING THE "MURDER TO AVOID ARREST" AGGRAVATOR WAS INSUFFICIENT.**

Respondent incorrectly asserts that Bosse did not raise, and thus forfeits, any argument that OCCA's decision was contrary to clearly established federal law under § 2254(d)(1). Doc. 50 at 89 n. 22. While this portion of the claim may be described as indistinct, it was still raised by Bosse. *See supra*, Ground III (citing *Dye v. Hofbauer*).

Appellate counsel argued that the State had failed to prove Bosse committed a predicate crime separate from the murder with the motive or intent of avoiding arrest or

prosecution for the separate crime. DA Brief at 83. Counsel argued while the aggravator may be inferred from circumstantial evidence, the inference of Bosse's intent must still be proven beyond a reasonable doubt. DA Brief at 84. Bosse addressed OCCA's analysis of the "murder to avoid arrest" claim through the lens of appellate counsel's arguments. Doc. 19 at 77–78. Bosse argued that OCCA's denial of the claim was "factually and legally unreasonable." Doc. 19 at 78. Bosse further argued that OCCA's finding was contrary to *Ring v. Arizona*, 536 U.S. 584 (2002), and *Jackson v. Virginia*, 443 U.S. 307 (1979), because the State failed to prove the aggravating circumstance beyond a reasonable doubt. Doc. 19 at 78–79.

## GROUND SIX
## PROSECUTORIAL MISCONDUCT DEPRIVED BOSSE OF HIS RIGHTS TO A FAIR TRIAL AND RELIABLE SENTENCING.

When seeking a conviction, a prosecutor must seek justice. *Berger v United States*, 295 U.S. 78, 88 (1935). A prosecutor fails in that duty when he allows his misconduct to eradicate the defendant's rights to a fair trial and reliable sentencing under the Eighth and Fourteenth Amendments. Such is the case here where the prosecutorial misconduct was invidious. The prejudicial impact of the State's misconduct began in the State's first-stage closing arguments and bled into the second-stage closing.

### A.     OCCA Unreasonably Applied *Donnelly*.

OCCA found the State's statements in first and second-stage closing argument were reasonable inferences from the evidence. *Bosse*, 400 P.3d at 863. Respondent asserts that this holding was neither contrary to, nor an unreasonable application of, clearly established law. Respondent contends that a prosecutor may comment on and draw reasonable

21

inferences from evidence presented at trial. Doc. 50 at 94. These statements were not drawn from reasonable inferences from the record; they were based in conjecture.

The State's prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. Respondent's arguments not only fail to acknowledge the prejudicial effect of the statements, but they fail to do so within the entire context of the proceedings.

The prosecutors commented on Bosse's lack of remorse. In part, Respondent re-urges OCCA's holding that lack of remorse may be considered in support of the continuing threat aggravator. Doc. 50 at 107. Here, such statements proved to be even more prejudicial as they came from the same prosecutor in two separate closing statements. Caswell laid a foundation in the first-stage closing that Bosse lacked remorse. In the second-stage closing, her statements built upon that premise and were then designed to affect the reliability of sentencing. *Compare Berger*, 295 U.S. at 89, *with New York Cent. R. Co. v. Johnson*, 279 U.S. 310, 316–18 (1929) (misconduct of the prosecuting attorney was not slight or confined to a single instance, but was pronounced and persistent, with a probable cumulative effect on the jury which cannot be disregarded as inconsequential).

District Attorney Greg Mashburn also improperly shifted the burden during his first-stage closing. He questioned Bosse's alibi during the morning hours, which coincided with the State's claim the fire was smoldering in the trailer. Tr. IX at 70. Mashburn again attempted to shift the burden to the defense by telling the jury that Bosse could have requested to send items out for testing. Tr. IX at 79; *see also* Doc. 19 at 86–87. Despite

warnings from the trial court, Mashburn continued to shift the burden by, again, arguing that the defense could have tested the items. Tr. IX at 80.

Respondent puts forth that Mashburn tailored these burden shifting arguments to rebut defense theories. Doc. 50 at 99–100. A prosecutor's "invited response" must be taken in context of the entire proceedings and must consider if the defendant's guilt was contested at trial. *United States v. Young*, 470 U.S. 1, 12 (1985).

The tenuous timeline and the science behind how long the fire smoldered resulted in contentious pretrial and trial litigation, including a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), hearing, and a hearing on the admissibility of expert testimony.[5] Trial counsel contested Bosse's guilt when they questioned the State's methods of testing, as well as the State's findings that the trailer fire smoldered for at least four hours. Thus, Mashburn's burden shifting was detrimental and prejudicial, not a reasonable and fair assessment of the State's evidence as Respondent implies.

Both prosecutors also made incendiary statements as they injected their opinions that Bosse had both "earned" and then "deserved" three death sentences. Respondent argues that OCCA correctly held that the challenged remarks were reasonable inferences from the record and asking for a death verdict was no more than a reminder to the jury that Bosse had committed three murders. Doc. 50 at 115. OCCA's ruling was unreasonable and contrary to clearly established federal law. *See Caldwell v. Mississippi*, 472 U.S. 320, 340 (1985) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).

---

[5] Admissibility of the evidence was addressed in his Direct Appeal brief at 10–19.

The State's misconduct was particularly prejudicial as it occurred during second-stage closing arguments and was intended to ensure a death sentence. Caswell argued, "I would submit to you . . . that [Bosse] has earned the death penalty . . . do not lose sight of what he did." Tr. XIII at 42. Similarly, Mashburn argued that Bosse deserved no mercy because he had not earned it. Tr. XIII at 56. Later, he argued, "[Bosse] should receive the punishment he deserves and he has earned." Tr. XIII at 68.

Prosecutors have a duty to refrain from improper methods of obtaining a conviction. Improper prosecutorial conduct rises to the level of constitutional error "when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial." *United States v. Morena*, 547 F.3d 191, 193 (3d Cir. 2008). Here, the prosecutors interjected their own opinions that death sentences were the only appropriate sentences. It is error for a prosecutor to urge a jury to reach a guilty verdict based "on grounds of civic duty." *Spears*, 343 F.3d at 1247 (quoting *Viereck v. United States*, 318 U.S. 236, 247–48 (1943)). When this misconduct is taken in context within the entire proceedings, the ultimate effect of the State's statements resulted in an unreliable sentencing.

A prosecutor may also not use closing argument to inflame the passions and prejudices of the jury. *Young*, 470 U.S. at 8 n.5. OCCA held the prosecutors' comments and gestures were not improper because they were directed at the jury, not Bosse. *Bosse*, 400 P.3d at 864. Respondent claims the prosecutors' speculations were reasonable and possible inferences based on the evidence. Doc. 50 at 108, 110–11. A review of the misstatements in their entirety belies Respondent's contentions.

24

Over objection, Caswell exhibited emotion while also gesturing during her closing argument. Tr. XIII at 45. Trial counsel raised a similar objection during Mashburn's closing. Tr. XIII at 66. Mashburn was lying on the floor "hollering" and gesturing wildly with his arms to try to mimic a knife attack. The State also invoked sympathy and fear by arguing Bosse was manipulating the jurors. "Don't let him manipulate you because, if you give him life without parole, then he has succeeded in manipulating you like he's done everybody else. And he can go to prison, and he can sit on his bunkbed and his feet can swing off the bunkbed, and he can say, I got them too." Tr. XIII at 64.

Invoking emotions for the victims complemented the prosecutors' pleas that Bosse had "earned" and "deserved" death. These invocations were improper and influenced the jury's sentences. *See United States v. Pena*, 930 F.2d 1486, 1490–91 (10th Cir. 1991) (finding prosecutor's argument was improper because it was calculated to inflame the jury's passions by implying that the defendant had committed another crime).

According to OCCA, the alleged misconduct was either not supported by the trial record or was cured by the trial court's rulings. *Bosse*, 400 P.3d at 862–65. OCCA's decision, which omitted a *Donnelly* analysis, is **contrary** to *Donnelly*. OCCA failed to make the inquiry after examining the entire proceedings to determine whether the misconduct resulted in a denial of due process. Rather than looking at the misconduct in its entirety, OCCA looked at each sub-issue in isolation. Thus, OCCA found that the prosecutors' misconduct was "based on the evidence," rather than causing prejudice and denial of due process.

Respectfully submitted,


*s/ Katrina Conrad-Legler*
KATRINA CONRAD-LEGLER, OBA No. 16953
ANDREW Z. STEBBINS, IN Bar No. 35066-53
Assistant Federal Public Defenders
Western District of Oklahoma
Capital Habeas Unit
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
(405) 609-5975 (phone)
Katrina_Legler@fd.org
Andrew_Stebbins@fd.org
COUNSEL FOR PETITIONER,
SHAUN MICHAEL BOSSE

**Certificate of Service**

I hereby certify that on December 27, 2022, I electronically filed the foregoing document with the Clerk's Office by using the CM/ECF system for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Joshua R. Fanelli
Assistant Attorney General for the State of Oklahoma

*s/ Katrina Conrad-Legler*
KATRINA CONRAD-LEGLER