# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SHAUN MICHAEL BOSSE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-18-204-JD** |
| | ) | |
| **CHRISTE QUICK, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## NOTICE OF INTERVENTION BY THE UNITED STATES AND BRIEF IN RESPONSE TO CERTIFIED CONSTITUTIONAL QUESTION

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

*/s/ Scott Maule*
SCOTT MAULE, OBA No. 31760
Assistant U.S. Attorney
United States Attorney's Office
Western District of Oklahoma
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
Tel: (405) 553-8700
scott.maule@usdoj.gov

MATTHEW R. GALEOTTI
Supervisory Official
Criminal Division

DAVID M. LIEBERMAN
Attorney, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii-vii

PROCEDURAL HISTORY ...................................................................................... 1

STATUTORY FRAMEWORK .................................................................................. 2

ARGUMENT............................................................................................................. 4

    I.   Section 2254(d)(1) does not encroach on the federal judiciary's Article III powers ........................................................................................................ 4

    II.  *Loper Bright* does not cast doubt on Section 2254(d)(1)'s constitutionality........................................................................................... 9

        A.  *Loper Bright* overruled *Chevron's* interpretation of the judicial review procedures in the Administrative Procedures Act ............. 9
        B.  *Loper Bright's* holding has no bearing on Section 2254(d)(1)'s constitutionality under Article III ................................................... 11
        C.  In all respects, Supreme Court precedent requires lower court adherence to Section 2254(d)(1).................................................... 14

    III. Bosse's contrary arguments lack merit ...................................................... 15

CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*,
    449 U.S. 90 (1980) ................................................. 7

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ............................................... 7

*Bank Markazi v. Peterson*,
    578 U.S. 212 (2016) ........................................... 19, 20

*Bosse v. Oklahoma*,
    580 U.S. 1 (2016) ................................................. 1

*Bosse v. State*,
    360 P.3d 1203 (2015) ............................................. 1

*Bosse v. State*,
    400 P.3d 834 (2017) .............................................. 1

*Bosse v. State*,
    499 P.3d 771 (2021) .............................................. 1

*Brown v. Allen*,
    344 U.S. 443 (1953) .............................................. 6

*Brown v. Davenport*,
    596 U.S. 118 (2022) ............................................. 14

*Case of Sewing Machine Cos.*,
    85 U.S. (18 Wall.) 553 (1873) ................................... 4

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ........................................... 9, 10

*Cobb v. Thaler*,
    682 F.3d 364 (5th Cir. 2012) .................................. 7, 9

*Crater v. Galaza*,
    491 F.3d 1119 (9th Cir. 2007) ................................... 8

*Evans v. Thompson*,
    518 F.3d 1 (1st Cir. 2008) ...................................... 9

*Ex parte Bollman*,
    8 U.S. (4 Cranch) 75 (1807) ................................................................. 2, 17

*Ex parte Dorr*,
    44 U.S. (3 How.) 103 (1845) ................................................................. 5

*Felker v. Turpin*,
    518 U.S. 651 (1996) ................................................................. 2, 5, 6, 20

*Green v. French*,
    143 F.3d 865 (4th Cir. 1998) ................................................................. 8, 11, 19

*Harrington v. Richter*,
    562 U.S. 86 (2011) ................................................................. 8, 13

*Hill v. United States*,
    368 U.S. 424 (1962) ................................................................. 7

*In re Stewart Foods, Inc.*,
    64 F.3d 141 (4th Cir. 1995) ................................................................. 15

*Jones v. Hendrix*,
    599 U.S. 465 (2023) ................................................................. 5

*Lindh v. Murphy*,
    96 F.3d 856 (7th Cir. 1996) (en banc) ................................................................. 2, 6, 9, 15, 19, 20

*Lockyer v. Andrade*,
    538 U.S. 63 (2003) ................................................................. 4

*Lonchar v. Thomas*,
    517 U.S. 314 (1996) ................................................................. 2

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ................................................................. 1, 2, 9, 10, 11, 12, 13, 15, 16

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ................................................................. 8, 17

*McCleskey v. Zant*,
    499 U.S. 467 (1991) ................................................................. 6, 7

*Miller v. French*,
    530 U.S. 327 (2000) ................................................................. 5, 20

*Miller-El v. Cockrell*,
537 U.S. 322 (2003) ............................................................... 17

*Mohamed v. Jones*,
100 F.4th 1214 (10th Cir. 2024) ........................................... 14

*Mothershead v. Wofford*,
No. 24-5706 (9th Cir.) ........................................................... 1

*Nevada v. Jackson*,
569 U.S. 505 (2013) ............................................................... 14

*Nix v. Williams*,
467 U.S. 431 (1984) ............................................................... 7

*Palmore v. United States*,
411 U.S. 389 (1973) ............................................................... 4

*Plaut v. Spendthrift Farm, Inc.*,
514 U.S. 211 (1995) ............................................................ 5, 19

*Reed v. Farley*,
512 U.S. 339 (1994) ............................................................... 7

*Rivers v. Roadway Express, Inc.*,
511 U.S. 298 (1994) ............................................................... 19

*Robertson v. Seattle Audubon Society*,
503 U.S. 429 (1992) ............................................................... 19

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
490 U.S. 477 (1989) ........................................................... 14-15

*Sanders v. Plappert*,
No. 16-6152 (6th Cir.) ........................................................... 1

*Shinn v. Ramirez*,
596 U.S. 366 (2022) ...................................................... 12, 14, 17

*Smiley v. Citibank*
(South Dakota), N.A., 517 U.S. 735 (1996) ........................... 10

*Stone v. Powell*,
428 U.S. 465 (1976) ............................................................... 7

*Teague v. Lane*,
  489 U.S. 288 (1989) ................................................................ 7

*United States v. Cotton*,
  535 U.S. 625 (2002) ................................................................ 6

*United States v. Klein*,
  80 U.S. (13 Wall.) 128 (1872) ............................................ 17, 18

*United States v. Leon*,
  468 U.S. 897 (1984) ................................................................ 7

*United States v. Maloid*,
  71 F.4th 795 (10th Cir. 2023) ................................................. 15

*Uttecht v. Brown*,
  551 U.S. 1 (2007) ............................................................... 13, 14

*Wainwright v. Sykes*,
  433 U.S. 72 (1977) .............................................................. 7, 12

*Waley v. Johnston*,
  316 U.S. 101 (1942) ................................................................ 6

*Williams v. Taylor*,
  529 U.S. 362 (2000) .............................................. 2, 3, 4, 5, 8, 13, 16

*Yarborough v. Alvarado*,
  541 U.S. 652 (2004) ................................................................ 3

*Zivotovsky ex rel. Zivotovsky v. Kerry*,
  576 U.S. 1 (2015) ................................................................... 6

## Statutes

5 U.S.C. § 706 ....................................................................... 11

28 U.S.C. § 1738 ..................................................................... 7

28 U.S.C. § 2254(d)(1) ...................................................... 1, 2, 3, 11, 20

## Rules

Fed. R. Civ. P. 5.1...................................................................... 1, 2

**Other**

Act of Feb. 5, 1867 ........................................................................................ 5

Antiterrorism and Effective Death Penalty Act of 1996 ..................................... 2

The Judiciary Act of 1789 ............................................................................... 5

Petitioner Shuan Michael Bosse, a state prisoner seeking federal habeas corpus relief, challenges the constitutionality of 28 U.S.C. § 2254(d)(1) in the wake of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). This Court subsequently notified the Attorney General of this constitutional question. The United States now intervenes to defend Section 2254(d)(1)'s constitutionality.[1]  *See* Fed. R. Civ. P. 5.1(c) ("[T]he attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge.").

## PROCEDURAL HISTORY

A jury in McClain County, Oklahoma, found Bosse guilty of three counts of first-degree murder and one count of first-degree arson. The jury further recommended a death sentence, which the trial court imposed. The Oklahoma Court of Criminal Appeals affirmed. *See Bosse v. State*, 360 P.3d 1203 (2015). The Supreme Court vacated the judgment and remanded for further proceedings. *See Bosse v. Oklahoma*, 580 U.S. 1 (2016). On remand, the Oklahoma Court of Appeals again affirmed, *see Bosse v. State*, 400 P.3d 834 (2017), *cert. denied*, 583 U.S. 1169 (2018), and later denied Bosse's petition for postconviction relief, s*ee Bosse v. State*, 499 P.3d 771 (2021).

---

[1] The United States has also intervened in pending Sixth and Ninth Circuit appeals where a habeas petitioner has challenged Section 2254(d)(1)'s constitutionality on similar grounds. See *Sanders v. Plappert*, No. 16-6152 (6th Cir.) (intervention brief filed Nov. 14, 2024); *Mothershead v. Wofford*, No. 24-5706 (9th Cir.) (proposed intervention brief filed May 6, 2025).

In 2019, Bosse filed a federal petition for a writ of habeas corpus in the Western District of Oklahoma and alleged various constitutional claims.  Doc. 19.  The matter was stayed in 2019 pending exhaustion of state remedies and reopened in 2022.  Doc. 24, 45.  In a supplemental reply filed in 2025, Bosse argued that 28 U.S.C. § 2254(d)(1)—the statute defining the standard of review for federal habeas courts reviewing state-court criminal adjudications—was unconstitutional in the wake of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  Doc. 70.  This Court subsequently issued an order under Federal Rule of Civil Procedure 5.1 notifying the Attorney General of this constitutional question.  Doc. 72.

## STATUTORY FRAMEWORK

The federal judiciary's authority to issue writs of habeas corpus is granted by statute, *see Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 94 (1807) (power to award writ "must be given by written law"), and "judgments about the proper scope of the writ are 'normally for Congress to make.'"  *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (quoting *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996)); *see Lindh v. Murphy*, 96 F.3d 856, 868 (7th Cir. 1996) (en banc) ("Collateral review of judgments … is subject to legislative control"), *rev'd on other grounds*, 521 U.S. 320 (1997).

In the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, "Congress placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners."  *Williams v. Taylor*, 529 U.S. 362, 399 (2000) (opinion of O'Connor, J.).  As relevant here, Section 2254(d)(1) prohibits a federal

2

court from granting habeas relief to a state prisoner with respect to a claim that was adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In *Williams v. Taylor*, the Supreme Court identified two categories of cases in which Section 2254(d)(1) authorizes a federal court to grant habeas relief to a state prisoner on a claim that has been resolved on the merits by a state court. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. And "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

The Supreme Court has also made clear that Section 2254(d)(1) does not permit the federal court to issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable." *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004). The Court also construed the phrase

3

"clearly established Federal law, as determined by the Supreme Court of the United States"

in Section 2254(d)(1), holding that "[t]hat statutory phrase refers to the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-

court decision."  *Williams*, 529 U.S. at 412; *see Lockyer v. Andrade*, 538 U.S. 63, 71-72

(2003) ("'clearly established Federal law'" under Section 2254(d)(1) is "the governing

legal principle or principles set forth by the Supreme Court at the time the state court

renders its decision").

## ARGUMENT

### I.    Section 2254(d)(1) does not encroach on the federal judiciary's Article III powers.

Congress's limitation of habeas relief in Section 2254(d)(1) to cases involving

certain fundamental legal errors does not contravene Article III of the Constitution.  The

statute instead represents a proper exercise of Congress's authority to define the scope of

the federal habeas remedy for state prisoners.

Article III provides that "[t]he judicial Power of the United States, shall be vested

in one supreme Court, and in such inferior Courts as the Congress may from time to time

ordain and establish."  Under Article III, "[t]he decision with respect to inferior federal

courts, as well as the task of defining their jurisdiction, was left to the discretion of

Congress."  *Palmore v. United States*, 411 U.S. 389, 400-401 (1973); *see Case of Sewing

Machine Cos.*, 85 U.S. (18 Wall.) 553, 578 (1873) ("[T]he distribution of the subjects of

jurisdiction among such inferior courts as Congress may from time to time ordain and

establish, within the scope of the judicial power, always [has] been, and of right must be the work of the Congress").

Article III thus "'gives the Federal Judiciary the power … to decide'" cases. *Miller v. French*, 530 U.S. 327, 342 (2000) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-219 (1995)) (emphasis omitted). But Congress still carries the responsibility for determining the scope of habeas relief under federal statute. *See* pp. 2-4, *supra*. And Section 2254(d)(1) reflects an appropriate limitation on that relief. *See Williams*, 529 U.S. at 412 (Section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus"); *Felker*, 518 U.S. at 662 (AEDPA "impos[ed] new requirements for the granting of relief to state prisoners").

Section 2254(d)(1)'s remedial limitation is also consistent with historical restrictions on federal habeas relief for state prisoners. Congress provided no general federal habeas corpus remedy for prisoners held in state custody until 1867. In the Judiciary Act of 1789, ch. 20, 1 Stat. 73, the first Congress vested the federal courts with jurisdiction to issue writs of habeas corpus, but specifically excluded relief for prisoners confined under state authority. *See Ex parte Dorr*, 44 U.S. (3 How.) 103 (1845). In 1867, Congress for the first time authorized federal courts to grant the writ "in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States." Act of Feb. 5, 1867, ch. 28, 14 Stat. 385. At that time, however, habeas corpus relief could be granted only when the court that rendered judgment lacked jurisdiction. *See Jones v. Hendrix*, 599 U.S. 465, 483 (2023) ("[A]t the founding, a

5

sentence after conviction by a court of competent jurisdiction was in *itself* sufficient cause for a prisoner's continued detention.") (internal quotation marks and citation omitted).

In later periods, the Supreme Court gradually expanded the notion of "jurisdictional" defects to include constitutional violations. *See United States v. Cotton*, 535 U.S. 625, 629-630 (2002); *McCleskey v. Zant*, 499 U.S. 467, 478 (1991). But "it was not until well into [the twentieth] century that [the] Court interpreted that provision to allow a final judgment of conviction[] to be collaterally attacked on habeas."[2] *Felker*, 518 U.S. at 663 (citing *Waley v. Johnston*, 316 U.S. 101 (1942) (per curiam), and *Brown v. Allen*, 344 U.S. 443 (1953)).

This lineage confirms that Section 2254(d)(1)'s restrictions on the habeas remedy comport with Article III. *See Zivotovsky ex rel. Zivotovsky v. Kerry*, 576 U.S. 1, 23 (2015) (explaining that the Supreme Court's "separation-of-powers cases … often put significant weight upon historical practice") (internal quotation marks and citation omitted). This Court "would have to cast history to the winds to say that [§ 2254(d)(1)], which respects fully-litigated judgments unless the state court has gone seriously wrong, transgresses constitutional limitations." *Lindh*, 96 F.3d at 873-874.

Additionally, as the Fifth Circuit has correctly observed, "AEDPA is hardly unique . . . in limiting the availability of a remedy even for aggrieved individuals who may have

---

[2] Bosse's claim that federal habeas courts exercised independent power to review state-court judgments "[f]rom the Founding until the enactment of AEDPA in 1996" is thus incorrect. Doc. 70, at 8 (brackets omitted).

legitimate federal constitutional claims." *Cobb v. Thaler*, 682 F.3d 364, 375 (5th Cir. 2012). Numerous well-established doctrines limit federal courts' authority to grant relief for constitutional violations on collateral review. *See, e.g.*, *McCleskey*, 499 U.S. at 494-497 (abuse-of-the-writ limitation for second or subsequent habeas petitions); *Teague v. Lane*, 489 U.S. 288, 310 (1989) (new rules of constitutional procedure are not cognizable on federal habeas review); *Stone v. Powell*, 428 U.S. 465, 494-95 (1976) (Fourth Amendment claims for which state provided opportunity for full and fair litigation are not generally cognizable on federal habeas review); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (barring federal habeas review of procedurally defaulted claims absent a showing of cause and prejudice); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (habeas relief is available for nonconstitutional "violations of federal laws when the error qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure'") (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)) (brackets omitted).[3] Although these are judge-made doctrines, restrictions on federal courts' authority to redetermine constitutional questions can also be imposed by Congress. *See* 28 U.S.C. § 1738; *cf. Allen v. McCurry*,

---

[3] Section 2254(d)(1) is also consistent with doctrines that restrict a federal court's authority to grant relief for constitutional violations in other contexts. *See, e.g.*, *Anderson v. Creighton*, 483 U.S. 635 (1987) (qualified immunity to damages actions claiming that official action violated constitutional rights); *United States v. Leon*, 468 U.S. 897 (1984) (good-faith exception to Fourth Amendment exclusionary rule); *Nix v. Williams*, 467 U.S. 431 (1984) (inevitable-discovery doctrine); *see also Cobb*, 682 F.3d at 375 (citing other examples).

449 U.S. 90, 103 (1980) (rejecting, in case involving the applicability of the Full Faith and Credit Act, the suggestion that the Constitution guarantees "every person asserting a federal right … one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the federal claim arises").

Given these historical data points and analogues, Section 2254(d)(1)'s "limitation upon the scope of a remedy is entirely ordinary and unexceptionable." *Green v. French*, 143 F.3d 865, 875 (4th Cir. 1998), *overruled on other grounds*, *Williams*, *supra*.  Bosse's contrary contentions (Doc. 70, at 7-9) misunderstand that history and ignore the principle that "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (internal quotation marks and citation omitted).

Critically, Section 2254(d)(1) does not infringe upon the federal judiciary's power to "say what the law is." *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).  The statute "simply sets additional standards for granting relief in cases where a petitioner has already received an adjudication of his federal claims by another court of competent jurisdiction." *Crater v. Galaza*, 491 F.3d 1119, 1127 (9th Cir. 2007).  As a consequence, "section 2254(d) does not limit any inferior federal court's independent interpretive authority to determine the meaning of federal law in any Article III case or controversy." *Green*, 143 F.3d at 874-875.  The Supreme Court stressed this very point in *Williams*.  When discussing Section 2254(d)(1)'s constraints on the habeas remedy, the Court reaffirmed that "'federal courts, even on habeas, have an independent obligation to say

what the law is.'"  529 U.S. at 411 (citation omitted); *see also Cobb*, 682 F.3d at 374 (explaining that "§ 2254(d)(1) does not intrude on the independent adjudicative authority of the federal courts," but "[r]ather … limits the grounds on which federal courts may grant the habeas remedy to upset a state conviction"); *Evans v. Thompson*, 518 F.3d 1, 11 (1st Cir. 2008) ("[W]hile AEDPA does restrict a remedy, it does not interfere with Article III powers."); *Lindh*, 96 F.3d at 872 ("Regulating relief is a far cry from limiting the interpretive power of the courts.").

Bosse's contrary arguments (Doc. 70, at 5-7, 9-10) miss the distinction between a habeas court's authority to interpret federal law and its statutory power to grant habeas relief.  Section 2254(d)(1) restricts only the latter.

## II.    *Loper Bright* does not cast doubt on Section 2254(d)(1)'s constitutionality.

In *Loper Bright Enterprises v. Raimondo*, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which had required federal courts to defer to agency interpretations of statutory language.  That holding has no bearing on the question whether Congress validly restricted the scope of the habeas remedy in Section 2254(d)(1).

### A.    *Loper Bright* overruled *Chevron*'s interpretation of the judicial review procedures in the Administrative Procedures Act.

*Chevron* had announced that where "Congress ha[d] not directly addressed the precise question at issue," a federal court reviewing the agency's statutory interpretation under the Administrative Procedure Act had to defer if the agency offered "a permissible

construction of the statute." 467 U.S. at 843. A reviewing court could not "simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Id.* (footnote omitted). This deference principle rested on "a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740-741 (1996).

In *Loper Bright*, the Supreme Court held that "*Chevron* defies the command of the [Administrative Procedure Act] that 'the reviewing court'—not the agency whose action it reviews—is to 'decide *all* relevant questions of law' and 'interpret … statutory provisions." 603 U.S. at 398 (quoting 5 U.S.C. § 706)); *see also id.* at 392 (reasoning that the Act "makes clear that agency interpretations of statutes … are *not* entitled to deference"). The Court further concluded that "*Chevron*'s presumption is misguided because agencies have no special competence in resolving statutory ambiguities." *Id.* at 400-401. To the contrary, the Court noted that "Congress expects courts to handle technical statutory questions." *Id*. at 402. When it comes to an agency's interpretation of the relevant statute, the Court explained that "[t]he better presumption is … that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch." *Id*. at 403. Going forward, federal courts must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority, … and

10

under the [Administrative Procedure Act] may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id*. at 412-413.

**B.** ***Loper Bright*'s holding has no bearing on Section 2254(d)(1)'s constitutionality under Article III.**

Bosse's attack on Section 2254(d)(1)'s constitutionality using *Loper Bright* fails for multiple reasons.

First, the Court in *Loper Bright* addressed a statutory question—whether judicial review under the Administrative Procedure Act (5 U.S.C. § 706) mandates federal court deference to the agency's interpretation of the relevant statute. The federal habeas proceedings here, by contrast, are governed by 28 U.S.C. § 2254(d)(1). The Court's effort to gauge congressional intent under the Administrative Procedure Act in *Loper Bright* does not accordingly guide the constitutional question here: whether Congress's enactment of Section 2254(d)(1) violates Article III.

Second, the Court in *Loper Bright* overruled *Chevron* deference for a federal agency's construction of a federal statute. Nothing in Section 2254(d)(1) similarly directs a federal court to defer to the state court's construction of a constitutional provision or federal statute. To the contrary, the federal court remains "free … to decide whether a habeas petitioner's conviction and sentence violate any constitutional rights." *Green*, 143 F.3d at 875. Section 2254(d)(1) simply restricts the habeas *remedy* to the subset of cases where the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." Because that remedial

11

restriction does not require federal court deference to the state court's constitutional or statutory constructions, it cannot be analogized to the (now-overruled) principle of *Chevron* deference.

Third, the Court's holding in *Loper Bright* focused on the relationship between federal agencies and the federal courts responsible for reviewing their acts.  In that setting, the Court concluded that "agencies have no special competence in resolving statutory ambiguities"; instead, "[t]he Framers … anticipated that courts would often confront statutory ambiguities and expected that courts would resolve them by exercising independent legal judgment."  603 U.S. at 400-401.  Section 2254(d)(1), by contrast, addresses the relationship between state-court adjudications and the federal courts responsible for reviewing them on federal habeas review.  In this setting, "federal courts *must afford* unwavering respect to the centrality 'of the trial of a criminal case in state court.'"  *Shinn v. Ramirez*, 596 U.S. 366, 390 (2022) (quoting *Wainwright*, 433 U.S. at 90) (emphasis added).  The Supreme Court has explained that "[f]ederal courts, years later, lack the competence and authority to relitigate a State's criminal case."  *Id*.  This distinction further undermines Bosse's attempt to tether Section 2254(d)(1) to *Loper Bright*.

If anything, *Loper Bright* weighs against Bosse's constitutional challenge.  The Court recognized that Congress retains authority to "authorize[]" agencies  "to exercise a degree of discretion" with respect to their matters, including the discretion "to give meaning to a particular statutory term," "to prescribe rules to 'fill up the details' of a statutory scheme," and "to regulate subject to the limits imposed by a term or phrase that

'leaves agencies with flexibility.'"  603 U.S. at 394-395 (citations omitted).  In such circumstance, "the role of the reviewing court" is to "recogniz[e] constitutional delegations, fix[] the boundaries of the delegated authority, and ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries."  *Id*. at 395 (internal quotation marks, brackets, and citations omitted).  The Court, however, concluded that Congress had "prescribe[d] no deferential standard for courts to employ in answering … legal questions" addressed by agencies in the first instance.  *Id*. at 392; *see id*. at 393 ("The text of the APA means what it says.").

AEDPA's text points in the opposite direction.  In it, Congress prescribed "binding[] directions to accord deference" to state-court adjudications.  *Uttecht v. Brown*, 551 U.S. 1, 10 (2007).  "[A] lack of deference to the state court's determination" would be "contrary to the purpose and mandate of AEDPA and to the now well-settled meaning and function of habeas corpus in the federal system."  *Harrington*, 562 U.S. at 104.  "The legislative history of § 2254(d)(1) … supports this interpretation."  *Williams*, 529 U.S. at 408 n.* (citing floor statements).  Finally, as documented, Section 2254(d)(1)'s limitations fully accord with the historical origins of federal habeas.  *See* pp. 4-7, *supra*.  In this posture, the federal habeas court's task of discerning whether its state-court counterparts "engaged in reasoned decisionmaking within those boundaries" aligns fully with "the traditional conception of the judicial function."  *Loper Bright*, 603 U.S. at 395-396 (internal quotation marks and citation omitted).

13

**C.    In all respects, Supreme Court precedent requires lower court adherence to Section 2254(d)(1).**

The Supreme Court's AEDPA case law independently forecloses Bosse's claim.  As catalogued above, the Court in *Williams* recognized Section 2254(d)(1) as a restraint on federal courts' authority to issue habeas relief to state prisoners.  *See* pp. 2-4, *supra*.  And the Court subsequently confirmed that Section 2254(d)(1) "requires" "substantial deference" to the state court's adjudication, *Nevada v. Jackson*, 569 U.S. 505, 512 (2013), and that AEDPA's directives are "binding" on federal courts conducting habeas review of state prisoner claims, *Uttecht*, 551 U.S. at 10; *see generally Shinn*, 596 U.S. at 377 ("To ensure that federal habeas corpus retains its narrow role, AEDPA imposes several limits on habeas relief, and we have prescribed several more.").  Critically, and most recently, the Court announced that, "[i]n AEDPA, Congress announced" "a constitutionally valid rule of decision" and "federal courts must follow it."  *Brown v. Davenport*, 596 U.S. 118, 127 (2022).[4]

Any suggestion that *Loper Bright* silently overruled the Supreme Court's AEDPA decisions should also be rejected out of hand.  The Supreme Court has cautioned against such indulgences.  *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on

---

[4] Even if that statement could be characterized as dicta, *Brown* still forecloses Bosse's claim.  The Tenth Circuit recently made clear that lower courts "are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements."  *Mohamed v. Jones*, 100 F.4th 1214, 1233 (10th Cir. 2024) (internal quotation marks and citation omitted).

reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). And the Tenth Circuit consistently "heed[s] the Court's command and continue[s] to apply Supreme Court cases that directly control" because "[o]nly the Supreme Court can overrule its own precedents." *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023).

### III.    Bosse's contrary arguments lack merit.

1.    Bosse argues (Doc 70, at 2) that Section 2254(d)(1) is unconstitutional under *Loper Bright*. That contention mislabels *Loper Bright* as a constitutional decision; it was not. The Supreme Court there held that the *Chevron*-deference principle rested on a misinterpretation of the Administrative Procedure Act's judicial review provisions. *See Loper Bright*, 603 U.S. at 399 ("*Chevron* cannot be reconciled with the APA."). That *statutory* holding does not guide the constitutional principles invoked by Bosse here.[5]

---

[5] This distinction also illustrates Bosse's misplaced citation (Doc. 70, at 5) to *Lindh v. Murphy*, where the Seventh Circuit rejected a claim that Section 2254(d)(1) offended Article III. *See* 96 F.3d at 871-874. In so holding, the Seventh Circuit remarked that the contrary conclusion "would mean that deference in administrative law under *Chevron* is unconstitutional." *Id*. at 871. That remark does not inform the present dispute because *Loper Bright* is a statutory decision. Moreover, Bosse's reliance on the *Lindh* remark rests on a logical fallacy. Even if a decision invalidating AEDPA would cast a constitutional cloud on *Chevron*, the contrary inference (*i.e.*, a decision invalidating *Chevron* would cast a cloud on AEDPA) does not automatically follow. *See In re Stewart Foods, Inc*., 64 F.3d 141, 145 n.3 (4th Cir. 1995) ("This type of inference is an example of affirming the consequent, a classic form of invalid reasoning.").

2.    Bosse emphasizes (Doc. 70, at 3) the Court's observation regarding the Framers' insistence "that the final 'interpretation of the laws' would be 'the proper and peculiar province of the courts.'"  *Loper Bright*, 603 U.S. at 385 (citation omitted).  That historical principle informed the Court's conclusion that "agencies have no special competence in resolving statutory ambiguities" and, therefore, merit no special deference. *Id*. at 400-401.  But that historical principle does not apply here because, as explained above, federal courts lacked authority to review state-court judgments during the Founding era.  *See* pp. 5-6, *supra*.  In any event, Section 2254(d)(1)'s remedial limitations do not impair the federal courts' "'independent obligation to say what the law is'" during habeas proceedings.  *Williams*, 529 U.S. at 411 (citation omitted); *see* pp. 6-8, *supra*.

3.    Bosse references (Doc. 70, at 4-5) Justice Thomas's and Justice Gorsuch's concurring opinions in *Loper Bright* stressing separation-of-powers principles.  That reference omits the explanations animating those passages.  The concurring justices detected a separation-of-powers problem because "*Chevron* prevents the Judiciary from serving as a constitutional check on the Executive."  603 U.S. at 414 (Thomas, J., concurring); *see also id*. at 433 (Gorsuch, J., concurring) ("[*Chevron*] forces judges to abandon the best reading of the law in favor of views of those presently holding the reins of the Executive Branch.").  Because Section 2254(d)(1) does not mandate deference to any Executive Branch actor or agency, it does not offend the separation-of-powers analysis in those concurrences.

4.    Bosse further relies (Doc. 70, at 7-8) on historical accounts showing the Framers' concern regarding the prejudices and partiality of state-court judges.

This critique fails on two fronts.  First, as already explained, Section 2254(d)(1) restricts the circumstances under which federal habeas relief may be awarded.  The statute does not require federal court deference to the state court's construction of a constitutional provision or federal statute.  *See* pp. 6-8, *supra*.  Second, and in any event, the Supreme Court has directed the lower federal courts to "afford unwavering respect" to criminal judgments entered by their state-court counterparts.  *Shinn*, 596 U.S. at 390.  That reflects the well-worn federalism principle that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  *Loper Bright* does not speak to, much less abrogate, that directive.

5.    The academic article referenced repeatedly in Bosse's brief (Doc. 70, at 7-10) also cites two Supreme Court decisions—*Marbury* and *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1872)—to criticize Section 2254(d)(1) as a "Treason to the Constitution." That effort is misplaced.

*Marbury* addressed a statute that expanded the Supreme Court's original jurisdiction to include issuance of writs of mandamus to federal officials, in violation of Article III. *See* 5 U.S. (1 Cranch) at 173-176.  The Court concluded that Congress lacked the "power … to assign original jurisdiction to [the Supreme] Court in other cases than those specified in" Article III.  *Id*. at 174.  In *Ex parte Bollman*, decided four years later, the Court made

17

clear that Congress has the authority to define the scope of federal habeas relief. *See* 8 U.S. (4 Cranch) at 94 ("[T]he power to award the writ by any of the courts of the United States[] must be given by written law"). And, as explained above, that authority includes the power to limit the availability of habeas as a remedy for state prisoners absent a particular showing.

The contention that Section 2254(d)(1) impermissibly encroaches upon the federal courts' power to decide cases, in contravention of *Klein*, likewise fails. *Klein* involved a suit to recover private property sold by the United States during the Civil War. Proof that the property owner had not aided the rebellion was made by showing that he had received a pardon from the President. After the Court of Claims ruled in the property owner's favor, Congress enacted a law requiring the Supreme Court to dismiss any appeal in a case in which the plaintiff had established his loyalty through a pardon. The Supreme Court held that the statute's limitation on the Court's jurisdiction was unconstitutional, stating that it attempted to "prescribe a rule for the decision of a cause in a particular way." 80 U.S. (13 Wall.) at 146. The Court also held that the statute at issue in *Klein* was unconstitutional because it "impair[ed] the effect of a pardon, and thus infring[ed] the constitutional power of the Executive." *Id*. at 147.

Even if *Klein* were read broadly as invalidating a statutory rule of decision requiring a court to decide a pending case in a particular way, it would be inapplicable here. Section 2254(d)(1) adopts a standard of general applicability that governs a class of cases—habeas petitions by state prisoners—but it does not "dictate[] the judiciary's interpretation of

governing law" or "mandate[] a particular result in any pending case." *Green*, 143 F.3d at

874; *see Bank Markazi v. Peterson*, 578 U.S. 212, 229 (2016) ("Congress may indeed direct

courts to apply newly enacted, outcome-altering legislation in pending civil cases."); *Plaut*,

514 U.S. at 218 (statute that "set out substantive legal standards for the Judiciary to apply"

did not violate *Klein*'s separation-of-powers principle); *Lindh*, 96 F.3d at 872 ("Congress

cannot tell courts how to decide a particular case, but it may make rules that affect classes

of cases.").[6]   The statute thus preserves for the courts "[t]he essence of judicial

decisionmaking—applying general rules to particular situations." *Rivers v. Roadway

Express, Inc.*, 511 U.S. 298, 312 (1994).

Moreover, as the Supreme Court has explained, "[w]hatever the precise scope of

*Klein*, … later decisions have made clear that its prohibition does not take hold when

Congress 'amends applicable law.'" *Plaut*, 514 U.S. at 218 (quoting *Robertson v. Seattle

Audubon Society*, 503 U.S. 429, 441 (1992)) (brackets omitted).  In *Robertson*, the Supreme

Court rejected a separation-of-powers claim based on *Klein*, explaining that "what

Congress directed … was a change in law, not specific results under old law."  503 U.S. at

439.  Later, in *Bank Markazi*, the Court observed that "a statute does not impinge on

---

[6] *Plaut* held that the statute involved in that case, which required federal courts to reinstate securities fraud actions that had been dismissed as time-barred, violated Article III because it attempted to "'reverse a determination once made, in a particular case.'"  514 U.S. at 225 (quoting Federalist No. 81, at 545).  Unlike the statute at issue in *Plaut*, Section 2254(d)(1) "do[es] not offend the separation of powers by purporting to legislatively reopen a final judgment" of an Article III court.  *Green*, 143 F.3d at 874.

19

judicial power when it directs courts to apply a new legal standard to undisputed facts." 578 U.S. at 230.

That principle applies here. Congress amended 28 U.S.C. § 2254 to impose new standards for granting habeas relief to state prisoners. *See Felker*, 518 U.S. at 662. "Rather than prescribing a rule of decision, [Section 2254(d)(1)] simply imposes the consequences of the court's application of the new legal standard[s]." *Miller*, 530 U.S. at 349. Because the statute "entrust[s] to the District Court application of those standards to the facts," *Bank Markazi*, 578 U.S. at 231, it does not violate Article III.

Congress has "ample power to adjust the circumstances under which the remedy of habeas corpus is deployed," *see Lindh*, 96 F.3d at 872, and in enacting Section 2254(b)(1), Congress did just that. The statute leaves to the courts the judicial functions of interpreting the law and applying it to the facts to determine whether habeas relief is warranted in a particular case, under the statutory standard. For these reasons, Section 2254(d)(1) respects the division between legislative and judicial functions that Article III requires. *Loper Bright* says nothing to the contrary.

## CONCLUSION

This Court should affirm Section 2254(d)(1)'s constitutionality.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

*/s/ Scott Maule*
SCOTT MAULE, OBA No. 31760
Assistant U.S. Attorney
United States Attorney's Office
Western District of Oklahoma
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
Tel: (405) 553-8700
scott.maule@usdoj.gov

MATTHEW R. GALEOTTI
Supervisory Official
Criminal Division

DAVID M. LIEBERMAN
Attorney, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530